Everett J. Cygal (*pro hac vice*)
J. Mark Fisher (*pro hac vice*)
Daniel J. Schufreider (*pro hac vice*)
**ARENTFOX SCHIFF LLP**
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: 312.258.5500
Facsimile: 312.258.5600
everett.cygal@afslaw.com
mark.fisher@afslaw.com
daniel.schufreider@afslaw.com

Aram Ordubegian (SBN 185142)
Christopher K.S. Wong (SBN 308048)
**ARENTFOX SCHIFF LLP**
555 South Flower Street, 43rd Floor
Los Angeles, CA 90071
Telephone: 213.629.7400
Facsimile: 213.629.7401
aram.ordubegian@afslaw.com
christopher.wong@afslaw.com

Counsel for The Catholic Mutual Relief Society
of America and Catholic Relief Insurance
Company

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

| | |
|---|---|
| In re, <br><br> THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California Corporation Sole, <br><br> Debtor and Debtor in Possession. | Case No. 24-02202-CL11 <br><br> Chapter 11 <br><br> **CATHOLIC MUTUAL'S MOTION FOR ATTORNEYS' FEES IN CONNECTION WITH ZALKIN CLAIMANTS' WITHDRAWN MOTION TO DISMISS** <br><br> Judge: Hon. Christopher B. Latham <br> Date: October 27, 2025 <br> Time: 2:00 p.m. PT <br> Dept: 1 |

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE CHRISTOPHER B. LATHAM, UNITED STATES BANKRUPTCY JUDGE; AND ALL PARTIES IN INTEREST:**

## I. Introduction

The Catholic Mutual Relief Society of America and Catholic Relief Insurance Company (together, "Catholic Mutual") hereby request that this Court exercise its inherent authority, as recognized by 11 U.S.C. § 105, to require the Zalkin Firm and/or the Zalkin Claimants to pay (1) the costs, expenses, and attorneys' fees reasonably incurred by Catholic Mutual in preparing its fully drafted response (attached as Exhibit A hereto) to the Zalkin Claimants' Motion to Dismiss the Debtor's Bankruptcy Case Pursuant to Bankruptcy Code Section 1112(b) (Dkt. 743, "Zalkin Motion" or "Motion"); and (2) the costs, expenses, and attorneys' fees reasonably incurred by Catholic Mutual in preparing its opposition (Dkt. 770) to the Zalkin Claimants' *Ex Parte* Motion for an Order Extending the Time for Briefing and Hearing on their own Motion to Dismiss (Dkt. 764). The Zalkin Firm and Zalkin Claimants unnecessarily caused Catholic Mutual to incur these fees and expenses, first by filing the Motion and noticing it for hearing, then by seeking to postpone briefing and hearing as the response, reply, and hearing dates neared, and finally by suddenly withdrawing the motion literally on the eve of the response date.

Among other things, the Zalkin Motion falsely asserted that the Diocese has the right to ample insurance coverage for sex abuse claims from Catholic Mutual, negating any financial distress. In its opposition, Catholic Mutual intended to demonstrate that this central theme—that the Diocese is in no financial distress because it supposedly has vast coverage entitlements, which the Diocese and its insurer Catholic Mutual are assertedly in cahoots to conceal—is fundamentally wrong. Indeed, the opposite is true: The Diocese's coverage is in serious doubt, based in part on the Zalkin Claimants' own assertions that their alleged abusers' long history of abuse was notorious and well known by the Diocese, making the Diocese uninsurable for the abusers' "expected or intended" abuse. So far from being in

cahoots with the Diocese, Catholic Mutual reserved its rights and filed a declaratory judgment action regarding coverage, but it has been unable to pursue this and other coverage defenses because of the Diocese's invocation of the *Montrose* rule[1] (pre-bankruptcy) and the automatic stay (in bankruptcy). Contrary to the Motion, the Diocese is in genuine financial distress because each of more than 400 claimants seeks big damages, while the Diocese's insurance coverage is in serious doubt.[2] The Diocese's bankruptcy is genuine. A copy of Catholic Mutual's draft Opposition Brief, as it was ready to be filed when the Zalkin Claimants withdrew their Motion, is **Exhibit A**.[3]

Having touted (without basis) the extent and scope of the Diocese's coverage, the Zalkin Claimants withdrew their Motion when they apparently realized that their Motion highlighted a material conflict of interest between themselves and the Official Committee of Unsecured Creditors ("Committee"). Had the Zalkin Claimants actually believed their Motion had merit, they would not have withdrawn it. By that time, however, Catholic Mutual (and presumably the Debtor and Committee) had incurred significant expenses in preparing an opposition or other response. As further detailed herein, sanctions, in the form of payment to Catholic Mutual of its fees and costs, are justified.

## II. Background

On July 3, 2025 the "Zalkin Claimants" (i.e., those sex abuse claimants who

---

[1] *See Montrose Chem. Corp. v. Superior Court* (1993) 6 Cal. 4th 287, 301 ("[A] stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action.").

[2] The declaratory judgment action is now stayed, but may be resolved someday if there is no consensual resolution of this bankruptcy case. Dismissal of the bankruptcy would end the prospect of a global mediated resolution, and force a decision on the "all or nothing" issues in the declaratory judgment action. That decision could leave the Diocese and the claimants without a global settlement and with little or no coverage from Catholic Mutual.

[3] References to Exhibits herein refer to Exhibits to the accompanying Declaration of Everett J. Cygal ("Cygal Decl.").

are represented by The Zalkin Firm) filed a Motion to Dismiss this bankruptcy case, setting it to be heard on July 31, 2025. (Dkt. 743.)[4] Contrary to the Local Rules, the movants did not file an accompanying notice of motion until July 7, 2025. (Dkt. 744.)[5]

Nevertheless, on July 14 the Court ordered that it would hear the Motion on July 31 and set Sunday, July 20 as the date for filing any opposition (Dkt. 757), essentially shortening Catholic Mutual's (and any other parties') time to prepare and file any response.[6] Given the nature and substance of the Motion, Catholic Mutual prepared to oppose the Motion on this expedited schedule.

On July 16, four days before the opposition deadline, the Zalkin Claimants, without consulting Catholic Mutual (or, to Catholic Mutual's knowledge, the Debtor or any other party), filed an *Ex Parte* Motion for an Order Extending the Time for Briefing and Hearing on their own Motion to Dismiss ("Extension Motion"). The Extension Motion (Dkt. 764) sought to continue the hearing date by two months, to September 30, 2025 or later. The purported basis for this lengthy continuance was "scheduling considerations in this case and to afford adequate time for the parties to analyze and brief the issues raised in the [Motion]." (*Id.* at 1-2.)

Catholic Mutual filed an objection to the Extension Motion (Dkt. 770), explaining that the apparent true reason for this about-face was the Zalkin Claimants' realization that their Motion highlighted a material conflict of interest between themselves and the Committee, and their desire to relieve the Committee from having

---

[4] Without explanation, the Zalkin Claimants appear to have filed the same motion and attachments twice on July 3, as Dkt.F 742 and 743. Out of caution, this Motion focuses on Dkt. 743 as the last word, in case there is any difference.

[5] The Local Rules require 28 days' notice. *See* L.B.R. 9013-6(a)(1) ("A motion, along with all Documents set forth in LBR 9013-7(a) and the notice of motion as required by LBR 2002-4, must be filed and served at least 28 days before the hearing date."). The Zalkin Claimants' July 7 notice of a July 31 hearing provided only 24 days' notice.

[6] The Court subsequently, on July 18, clarified that opposition would be due Monday, July 21, 2025. (ECF 773.)

to take a position on the Zalkin Motion to Dismiss while the Committee's Motion for Limited Stay Relief (Dkt. 568) remained pending. The Court denied the Extension Motion on the afternoon of Friday, July 18, holding that the Extension Motion's ambiguous assertions were insufficient to satisfy the "for cause" element required by Federal Rule of Bankruptcy Procedure 9006(b). (Dkt. 773.)

Denial of the Extension Motion meant that the Committee would have to take a position on the Motion to Dismiss, which the Zalkin Claimants were apparently desperate to avoid. Late in the day on Friday, July 18—almost immediately after the Extension Motion was denied, and the business day before oppositions to the Motion were due—the Zalkin Claimants withdrew their Motion. (Dkt. 776.) The Court then took the Motion to Dismiss off its calendar. (Dkt. 777.) The Zalkin Claimants purportedly withdrew the Motion "without prejudice pursuant to Federal Rule of Civil Procedure 41(a), made applicable by Federal Rules of Bankruptcy Procedure 9014(c) and 7041." (Dkt. 776 at 1.) As discussed herein, Rule 41(a) concerns voluntary dismissal of lawsuits or counterclaims—not motions to withdraw motions.

*To recap the events of the afternoon of Friday, July 18: Catholic Mutual's counsel received notice, via electronic service from the Court's ECF filing system, of the Court's Order denying the Extension Motion at 1:17 pm PST. Notice of the Zalkin Claimants' motion to withdraw their Motion to Dismiss arrived at 3:32 pm PST, and notice of the Court's removing the Motion to Dismiss from its calendar arrived at 3:45 pm PST.*

The substance of the Motion to Dismiss and its length (16 pages plus nearly 900 pages of exhibits) caused Catholic Mutual to expend significant resources preparing its opposition, which it had already completed in final form before the Zalkin Claimants moved to withdraw their Motion to Dismiss (since Catholic Mutual had relied on the original deadline of Sunday, July 20, and its counsel had to complete their work by Friday, July 18 due to preexisting weekend commitments). As set forth in the accompanying Declaration of Everett J. Cygal, Catholic Mutual incurred

$83,485 in fees and costs in preparing its opposition to the Motion to Dismiss and in preparing its opposition to the Extension Motion. (Cygal Decl. ¶ 2.) Of that amount, approximately $66,555 is attributable to preparing the opposition to the Motion and $16,930 is attributable to preparing the opposition to the Extension Motion. (*Id.* ¶ 3.)

### III. Argument

**A. The Court Has Inherent Authority to Sanction as Recognized by Bankruptcy Code Section 105(a).**

While Catholic Mutual and its counsel appreciate zealous advocacy on behalf of a client, the conduct of the Zalkin Claimants and their counsel crossed the line of such advocacy by bringing a Motion they knew was meritless, as evidenced by their immediately withdrawing it in a procedurally improper manner. There can be no proper purpose for this conduct, only gamesmanship. In this situation, the Court has the authority to order sanctions under its inherent authority, evidenced by Bankruptcy Code Section 105(a).

A court hearing a bankruptcy case has inherent authority, recognized by section 105(a) of the Bankruptcy Code, to sanction persons, whether a party or an attorney, who unreasonably and vexatiously multiply the proceedings by filing frivolous motions. *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996). Section 105(a) provides in pertinent part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

In *Rainbow Magazine,* the Ninth Circuit recognized that "[t]here can be little doubt that bankruptcy courts have the inherent power to sanction vexatious conduct presented before the court. The inherent power is recognized in the statutory grant Congress has provided the bankruptcy courts [in 11 U.S.C. § 105]." *Rainbow*

*Magazine*, 77 F.3d at 284. By providing that bankruptcy courts may issue orders necessary "to prevent an abuse of process," Congress impliedly recognized that bankruptcy courts have the same inherent power to sanction that the United States Supreme Court recognized exists within Article III courts. *Id.* at 284 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991); *see also In re Courtesy Inns, Ltd.* (*Jones v. Bank of Santa Fe*), 40 F.3d 1084, 1089 (10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*."); *In re Pace (Havelock v. Taxel)*, 159 B.R. 890, 904 (B.A.P. 9th Cir. 1993) (holding that § 105 grants bankruptcy courts the power to sanction egregious conduct), *aff'd in relevant part*, 67 F.3d 187 (9th Cir. 1995).[7] That is, "'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Rainbow Magazine*, 77 F.3d at 283 (quoting *Chambers*, 501 U.S. at 43). In *Rainbow Magazine*, the court, among other things, affirmed the imposition of sanctions against a non-party, non-attorney, and non-signatory pursuant to the inherent powers of the bankruptcy court. *Id.* at 282. Courts have held that this authority is available to sanction attorneys who act vexatiously. *See In re Marvel*, 265 B.R. 605, 610-11 (N.D. Cal. 2001).

Generally speaking, before ordering sanctions under its inherent powers, a court must make a finding that counsel's conduct was tantamount to bad faith, though

---

[7] While some courts have held that bankruptcy courts' authority to sanction arises from § 105(a), other courts have held that this inherent power exists without reference to any rule. *See, e.g., Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003) (citing *Chambers*, 501 U.S. at 42–47); *In re Crystal Cathedral Ministries*, No. 2:12-BK-15665-RK, 2020 WL 1649619, at *32 (Bankr. C.D. Cal. Mar. 31, 2020), *aff'd*, No. 2:12-BK-15665-RK, 2021 WL 2182975 (B.A.P. 9th Cir. May 28, 2021).

there need not be an explicit finding of bad faith. *Primus Auto. Fin.l Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997); *Marvel*, 265 B.R. at 610. Bad faith exists when an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Primus*, 115 F.3d at 649 (citing *In re Keegan*, 78 F.3d 431, 436 (9th Cir. BAP 1995)). That is, "a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995).

**B.    The Zalkin Firm's Motion to Dismiss Was Filed for No Proper Purpose (as its Immediate Withdrawal Shows), but Only Needlessly Multiplied Expenses for the Parties and the Estate.**

The Zalkin Claimants purportedly withdrew the Motion "without prejudice pursuant to Federal Rule of Civil Procedure 41(a)." (Dkt. 776 at 1.) Rule 41 (entitled "Dismissal of Actions") expressly applies only to motions to voluntarily dismiss entire complaints. It does not apply to withdrawal of single claims, much less to withdrawal of motions. *See Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687–88 (9th Cir. 2005) ("In the specific context of Rule 41(a)(1), we have held that the Rule does not allow for piecemeal dismissals."); *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1513 (9th Cir. 1995) ("Rule 41 is reserved for circumstances in which the result of the alleged dismissal is that one or all of the defendants are released from the action."); *Restoration Indus. Ass'n Inc. v. ThermaPure Inc.*, No. CV 13-8523 JVS, 2014 WL 12603210, at *2 (C.D. Cal. Apr. 7, 2014) ("Rule 41 does not provide for the voluntary dismissal of a claim, but an entire action.") (citing *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953) (explaining how the word "action ... denotes the entire controversy, whereas 'claim' refers to what has traditionally been termed 'cause of

action'")).

The Zalkin Claimants withdrew their Motion to Dismiss immediately after the Court's July 18 denial of their Extension Motion. This about-face shows that they knew their Motion to Dismiss was meritless and was brought for some other improper purpose, such as:

- to generate publicity for this case;
- as a ham-fisted attempt to punish the Diocese;
- to vindictively express frustration at how long the judicial and mediation components of bankruptcy take;
- to attempt to force concessions from the Debtor and/or Catholic Mutual by multiplying their costs.

None of these purposes is proper, and the last is particularly improper. While the Zalkin Firm proclaims that it seeks full and fair compensation for Zalkin Claimants (even to the detriment of other claimants, despite the Zalkin Firm's membership on the Claimants' Committee), its actions in filing a grandstanding Motion to Dismiss (which it did not timely notice for hearing), and then backing down the moment the Court went ahead by scheduling briefing and hearing, only caused needless multiplication of fees incurred by other parties and depletion of the Estate. This is not the only example of runaway fees potentially derailing a bankruptcy case. In the Diocese of Oakland case (No. 23-bk-40523), the Diocese recently sought to postpone the approval hearing for its bankruptcy plan because the fees incurred by the Committee (at the Estate's expense) have grown so large that the Debtor-Diocese lacks the funds to implement the plan, preventing settlement with the abuse claimants. *See* **Exhibit B**.

Regardless of their precise improper purpose, the Zalkin Firm and Zalkin Claimants filed a meritless Motion to Dismiss and then withdrew it in a procedurally defective manner. This is sanctionable conduct that caused Catholic Mutual to incur needless expense, which it should not have to bear.

## IV. Conclusion

This Court's inherent authority to enter appropriate sanctions for improper filings and abuse of the judicial process may include both an award of attorneys' fees and related expenses for addressing this conduct. *Chambers*, 501 U.S. at 44-46 ("an assessment of attorney's fees is undoubtedly within a court's inherent power"). In this instance, an appropriate sanction would be to award Catholic Mutual the fees it needlessly incurred. Catholic Mutual has incurred approximately $66,555 in preparing the opposition to the Motion and $16,930 in preparing the opposition to the Extension Motion, for a total of $83,485. (Cygal Decl. ¶¶ 2-3.)

Catholic Mutual respectfully requests that the Court grant this Sanctions Motion and impose sanctions on the Zalkin Firm pursuant to its inherent authority, as recognized by 11 U.S.C. § 105. Catholic Mutual seeks sanctions in an amount no less than the attorneys' fees and costs incurred by Catholic Mutual in preparing the opposition to the Motion and in preparing the opposition to the Extension Motion, as well as such other amounts the Court deems just and necessary to deter future frivolous conduct by Zalkin Claimants and their counsel.

Dated: August 5, 2025

Respectfully submitted,

**ARENTFOX SCHIFF LLP**

By: /s/ *Everett J. Cygal*
Everett J. Cygal
J. Mark Fisher
Daniel J. Schufreider
Aram Ordubegian
Christopher K.S. Wong

Counsel for The Catholic Mutual Relief Society of America and Catholic Relief Insurance Company