Order Entered on
June 2, 2026
by Clerk U.S. Bankruptcy Court
Southern District of California

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF SAN DIEGO,<br><br>Debtor. | BANKRUPTCY NO.    24-02202-CL11<br><br>Name of Judge:    Christopher B. Latham |

## ORDER RE OBJECTION TO CLAIM NO. 20670

IT IS HEREBY ORDERED as set forth on the continuation page(s) attached, numbered two (2) through four (4).

DATED:    June 2, 2026

_____
Judge, United States Bankruptcy Court

Page 2  | ORDER RE OBJECTION TO CLAIM NO. 20670

IN RE THE ROMAN CATHOLIC BISHOP OF SAN DIEGO                    Case No. 24-02202-CL11

The court has considered Debtor's objection to Claim Nos. 20669 & 20670 (ECF Nos. 1176 & 1223), Claimant's opposition (ECF No. 1634), Debtor's reply and supporting document (ECF Nos. 1688 & 1690), the oral argument at the hearing on the matter, and its own docket.

Debtor objected to Claim Nos. 20669 & 20670, arguing they are subject to a 2023 settlement executed by Claimant's husband and attorney in fact under a durable power of attorney (the "Final Settlement") (ECF No. 1223). The former claim stems from alleged sexual abuse (ECF Nos. 1176, 1223 & 1226). The latter asserts breach of contract, elder abuse, and promissory estoppel resulting from Debtor's asserted breach of a lifetime care commitment. *Id*.

Lisa Todd, Claimant's daughter, filed the subject claims. They arise from a state court suit where Ms. Todd was apparently acting as her mother's guardian ad litem.[1] At bottom, she argues the Final Settlement is unenforceable; and even if valid, it does not cover Claim No. 20670's breach of contract, elder abuse, and promissory estoppel causes.

*Claim No. 20669*

Since the Final Settlement apparently predates the state court litigation, the court looks to California Civil Code § 1541 to determine its validity. Under that, an "obligation is extinguished by a release given to the debtor by the releasing party, upon a new consideration, or in writing, with or without new consideration." CAL. CIV. CODE § 1541.

In the written Final Settlement, Debtor agreed to pay Claimant $200,000 for her reported abuse and other claims (ECF No. 1634-7, Ex. 4). In exchange, she "release[d] and waiv[ed] of any and all claims related to and arising out of the claims described above." *Id.* Stanley Cameron, Claimant's husband and attorney in fact, signed the Final Settlement on her behalf. *Id.* Accordingly, the settlement is facially valid, with the release covering all claims arising from any alleged sexual abuse.

Ms. Todd maintains that Claimant lacked capacity in 2006, invalidating both the power of attorney's effectiveness and the settlement. But as Debtor correctly points out, it relied in good faith on Mr. Cameron's attorney in fact status when entering the Final Settlement, so it cannot be liable to Claimant under California Probate Code § 4303's safe harbor provision. That section protects a third party relying in good faith on a power of attorney from liability to the principal or other person if the document is presented by the designated attorney in fact, appears facially valid, and is acknowledged by a notary or signed by two witnesses. CAL. PROB. CODE § 4303.

Good faith reliance is met here.[2] Mr. Cameron held himself out as Debtor's attorney in fact, as shown in the document's signature block (ECF No. 1634-7, Ex. 4). The power of attorney form

---

[1] Ms. Todd's standing in this matter appears dubious. This court has never declared her a guardian ad litem in this bankruptcy. Regardless, the claims are properly disallowed for the reasons stated in this order.

[2] The court also notes that under California Probate Code § 4121 the power of attorney is legally sufficient for the same reasons described in the paragraph.

Signed by Judge Christopher B. Latham June 2, 2026

Page 3   | ORDER RE OBJECTION TO CLAIM NO. 20670

<u>IN RE THE ROMAN CATHOLIC BISHOP OF SAN DIEGO</u>                    Case No. 24-02202-CL11

appears valid, lacking signs of forgery. *Id.* Claimant's handwritten signature is present. She even made corrections to the March 27, 2021 execution date. *Id.* The document was notarized that same day in Orange County, California, bearing the notary's seal. *Id.* Thus, regardless of Claimant's mental capacity, Debtor is not liable to Claimant per California Probate Code § 4303 and can stand on the Final Settlement's release of claims.

In sum, Claim No. 20669 is barred by the Final Settlement. *See* Cal. Pro. Code. § 4301; *Kaneko v. Yager* (In re Kaneko), 196 Cal. App. 4th 1270 (2011).

*Claim 20670*

Claim 20670's causes for breach of contract, elder abuse, and promissory estoppel causes are also subject to the general release and are unsupported in fact and law. The grounds underlying this claim relate to a 2017 letter written to Claimant's sister that states:

> As you know, in 2012 the Diocese of San Diego made a commitment to provide payment for counseling session and psychiatric appointments for your sister Cathy Cameron for as long as Cathy needs them, for the rest of her life. In recent years the Diocese has also provided payment for in-home health care, prescription medications, supplemental health insurance, and for the assisted living facility where Cathy currently lives. This is to put in writing that the Diocese will continue to provide payment for these items for Cathy for the rest of her life.

(ECF No. 1624, Ex. 3). Ms. Todd alleges this letter created a contractual obligation by Debtor to Claimant. In 2023, Debtor stopped providing Claimant with the above resources. Sometime after that, the parties entered into the Final Settlement.

The Final Settlement's general waiver covered all the actions contained in Claim No. 20670. It forever released Debtor from "any and all claims…(at law, in equity or otherwise)" whether known or unknown at the Final Settlement's execution, except those arising from the settlement's breach (ECF No. 1634-7, Ex. 4, pg. 3). The agreement explicitly included a "waiver of each and all the provisions of California Civil Code § 1542," and noted that Claimant understood the provision's impact, which had been fully explained to her. *Id.*

The parties' clear intent was for Claimant to waive all known and unknown claims against Debtor at the Final Settlement's execution. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). And the breach of contract, promissory estoppel, and elder abuse claims existed when the settlement was signed. The purported breach of contract occurred when Debtor stopped providing services around 2023 – although the court notes that the 2017 letter is not a binding agreement, *infra*. Claimant supposedly relied on a 2017 promise of a lifetime commitment, giving rise to the claimed promissory estoppel. The elder abuse is based on the allegation that Debtor induced Claimant to sign the Final Settlement, thereby giving up that purported contractual commitment contained in the 2017 letter (ECF No.1634). Since all these alleged injuries occurred on or before the execution of the Final Settlement, the general release bars each cause of action in Claim 20670.

Signed by Judge Christopher B. Latham June 2, 2026

IN RE THE ROMAN CATHOLIC BISHOP OF SAN DIEGO                                    Case No. 24-02202-CL11

Independent of the general release, Ms. Todd fails to support valid claims for breach of contract, promissory estoppel, and elder abuse. First, the 2017 letter is a gratuitous promise at most, not a binding contract.[3] It is undisputed Claimant did not provide consideration.[4] And the letter was addressed to Claimant's sister who lacked authority to contract on Claimant's behalf. Finally, the breach of contract does not arise from the Final Settlement itself as Debtor paid her the required $200,000.

Second, there is no evidence of detrimental reliance or injustice to support a claim of promissory estoppel. Claimant's complaint simply says, "it was reasonable and foreseeable that she would and did rely upon that promise," but never explains what actions she took in reliance (ECF No. 1634). Her opposition to the claim objection is likewise silent on the point. *Id*. And enforcing the promise is not necessary to prevent injustice – quite the opposite. Injustice would occur if Claimant were permitted to collect against Debtor again and bypass a binding settlement and release, when she was never contractually entitled to ongoing treatment in the first place.

Finally, several elements of elder abuse are missing and, regardless, Debtor relied on a facially valid power of attorney, *supra*. Claimant's complaint alleges elder abuse because Debtor induced her to sign the Final Settlement and forego an alleged lifetime commitment of treatment. But as explained above, Debtor had no such contractual duty (ECF No. 1634). So Debtor did not hide, appropriate, retain, or assist in any wrongful taking of Claimant's property. Instead, it gave her value in the form of $200,000. And there is scant evidence that Debtor knew or should have known that by offering this financial benefit, it was likely to harm Claimant. In fact, it appears Debtor knew it was going to help her by providing those monies.

### Conclusion

Accordingly, it **sustains** Debtor's objection, **disallows** Claim Nos. 20669 & 20670, and **strikes** the corresponding Proofs of Claim.


IT IS SO ORDERED.

---

[3] Ms. Todd vaguely claims the Final Settlement was entered under economic duress and fraudulent inducement based on the allegedly binding lifetime care commitment (ECF No. 1634). However, as discussed *infra*, that commitment was merely a unilateral promise unsupported by consideration, so there was no fraud, and Debtor could not have threatened to breach a contract or withhold a legally binding debt. *See CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 645 (1998) (economic duress's wrongful act include a bad faith threat to breach a contract or withhold a payment). Further, even given the Claimant and her husband's advanced years, the signing of the agreement did not make a mockery of [the] freedom of contract [or] undermine the proper functioning of our economic system." *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, 25 F.4th 613, 622 (9th Cir. 2022) (citing *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159 (1984).

[4] Claimant might respond that the alleged sexual assault was itself consideration, but it is not. Consideration must confer a benefit, and the assault did not benefit Debtor. Further, the assault happened in the past, so if anything, it would be past consideration.